# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Travelers Property Casualty Company of America, | Civil No. 15-2403 (DWF/LIB) |
| Plaintiff, | |
| v. | **AMENDED**[1] **MEMORANDUM OPINION AND ORDER** |
| Christopher A. Klick, Choice Financial Group, and Rainy River Marina, Inc., | |
| Defendants. | |

---

Stacy E. Ertz, Esq., Borgelt, Powell, Peterson & Frauen, S.C., counsel for Plaintiff.

Stephen F. Rufer, Esq., Pemberton Sorlie Rufer & Kershner, counsel for Defendants Christopher A. Klick and Rainy River Marina, Inc.

---

# INTRODUCTION

While on a fishing trip with two companions, Defendant Christopher A. Klick

("Klick") sustained personal injuries due to exposure to carbon monoxide gas released

from the fishing boat.  After the accident, Klick sued Choice Financial Group ("Choice")

and Rainy River Marina, Inc. ("Rainy River"), the entities that allegedly sold and

---

[1]     On September 26, 2016, the Court issued an Amended Memorandum Opinion and Order (Doc. No. 70) to omit the name of an attorney that the Court inadvertently included in its original Memorandum Opinion and Order (Doc. No 69).  The Court now issues a second Amended Memorandum Opinion and Order for two reasons:  (1) to clarify its ruling with respect to Travelers' duty to defend; and (2) having received input from the parties in response to the Court's request, to dismiss Travelers' breach-of-contract claim and request for a declaration that the *Miller-Shugart* agreement voids the Policy.

serviced the fishing boat prior to the accident.  Rainy River was the named insured on a marine general liability insurance policy issued by Plaintiff Travelers Property Casualty Company of America ("Travelers"), and it filed a claim under the policy.  Subsequently, Travelers filed this action for declaratory judgment against Klick, Choice, and Rainy River, seeking an order declaring, among other things, that the policy provides no coverage related to the accident.[2]

Presently, the Court considers Travelers' Motion for Summary Judgment (Doc. No. 46) and Klick and Rainy River's Motion for Partial Summary Judgment (Doc. No. 51).  The parties' motions focus on the meaning of the insurance policy's pollution exclusion, which excludes coverage for injuries arising out of the release of pollutants into "atmosphere."  Because Klick's injuries resulted from carbon monoxide released from the fishing boat into ambient air—rather than air within an enclosed structure such as a building—the Court concludes that the pollution exclusion precludes coverage with respect to Travelers' duty to indemnify Rainy River.  The pollution exclusion does not, however, preclude coverage with respect to Travelers' duty to defend Rainy River.  Accordingly, the Court grants in part and denies in part Travelers' motion, and it grants in part and denies in part Klick and Rainy River's motion.

---

[2]    On November 24, 2015, Travelers' claims against Choice were dismissed with prejudice pursuant to the parties' stipulation.  (Doc. Nos. 36, 37.)

## BACKGROUND

On September 1, 2013, Klick and two companions were on a fishing trip on Lake of the Woods in northern Minnesota.  (Doc. No. 44 ("Stipulated Facts") ¶¶ 1, 3.)  They were fishing aboard a 25-foot Baja Cruiser fishing boat, which, according to Klick, Choice and Rainy River had sold to one of Klick's companions and Rainy River had stored and serviced.  (*Id.* ¶ 1; Doc. No. 48 ("Ertz Aff.") ¶ 2, Ex. 1 ("Underlying Compl.") ¶¶ 6-9.)  The fishing boat had a roofed wheelhouse that was enclosed on three sides and open at the back.  (Stipulated Facts ¶ 9; Doc. No. 54 ("Klick Aff.") ¶ 6.)

During the trip, the fishermen noticed that the boat's engine did not appear to be functioning properly.  (Klick Aff. ¶ 5; *see also* Stipulated Facts ¶ 3.)  At one point, while Klick was standing in the boat's wheelhouse, one of Klick's companions removed the cover to the engine compartment to examine the engine.  (Klick Aff. ¶ 5.)  According to Klick, carbon monoxide gas, which had built up in the engine compartment, exited the engine compartment and poisoned the three men.  (Stipulated Facts ¶¶ 3-5, 7-8, 13, 16.)  Klick's two companions died, while Klick—who fell from the wheelhouse into the engine compartment—suffered brain damage and burns.  (Klick Aff. ¶¶ 10, 11; Ertz Aff. ¶ 3, Ex. 2 at 1-2; *see also* Stipulated Facts ¶¶ 7, 8, 13.)

On August 12, 2014, Klick filed a personal injury lawsuit against Rainy River and Choice.  (Stipulated Facts ¶ 18; Underlying Compl.)  All of the claims in Klick's complaint (the "Underlying Complaint") stemmed from factual allegations that:

(1) Choice and Rainy River serviced and sold the fishing boat to Klick's companion prior

to the accident; (2) the fishing boat's exhaust system malfunctioned and leaked carbon

monoxide; and (3) the leaked carbon monoxide injured Klick.  (Underlying Compl.)

Klick sought damages, interest, and costs.  (*Id.*)

On November 17, 2014, Rainy River notified its insurance agent of the personal

injury lawsuit initiated by Klick and requested that Travelers defend Rainy River in the

litigation.  (Stipulated Facts ¶ 25.)  Travelers had issued Rainy River a marine general

liability insurance policy for the period of June 15, 2013 to June 15, 2014 (the "Policy").

(Ertz Aff. ¶ 7, Ex. 6 ("Policy").)  The Policy included both a duty to indemnify and a duty

to defend.  Specifically, under the Policy, Travelers was obligated to:  (1) pay, on behalf

of Rainy River, amounts that Rainy River "shall become legally obligated to pay as

damages" as a result of certain "bodily injury"; and (2) defend Rainy River against any

claim or suit seeking such damages.  (Policy at 30 (Sec. II, Coverage A, ¶ 1).)  However,

the Policy also included various exclusions including a Pollution Exclusion, which stated:

> This insurance does not apply to: . . . Any liability for loss, injury, damage
> or expense arising out of the actual, alleged or threatened seepage,
> discharge, dispersal, disposal or dumping, release, migration, emission,
> spillage, escape, or leakage of "pollutants" into or upon land, atmosphere,
> environment, or any watercourse or body of water . . . .

(*Id.* at 30-32 (Sec. II, Coverage A, ¶ 2(6)).)  Under the Policy, a "pollutant" is "any solid,

liquid, gaseous, or thermal irritant or contaminant, including smoke, vapors, soot, fumes,

acids, alkalis, petroleum products or derivatives, chemicals, sewerage, spoils, and waste

materials or substances."  (*Id.* at 28 (Sec. I, ¶ 20(27)).)

On January 21, 2015, pursuant to a reservation of rights, Travelers agreed to

defend Rainy River in the personal injury lawsuit initiated by Klick.  (Ertz Aff. ¶ 6,

Ex. 5.)  On May 5, 2015, Travelers filed this action seeking a declaration that:  (1) the

Policy provided no coverage for liability arising out of the September 1, 2013 accident;

and (2) Travelers had no duty to defend or indemnify Rainy River in connection with the

underlying personal injury lawsuit.  (Doc. No. 1 ("Compl."); Doc. No. 29 ("Am.

Compl.").)  On August 19, 2015, Klick and Rainy River entered into a *Miller-Shugart*

agreement in the personal injury lawsuit.  (Doc. No. 53 ("Rufer Aff.") ¶ 2, Ex. A.)  Under

the *Miller-Shugart* agreement, Rainy River agreed to judgment in favor of Klick, and

Klick agreed not to recover the judgment from Rainy River but reserved the right to

recover from Rainy River's insurer, Travelers.  (*Id.* ¶¶ 8-11, 15.)  On September 18,

2015, Travelers filed an Amended Complaint seeking a declaration that the

*Miller-Shugart* agreement voided any coverage available to Rainy River under the Policy.

(Am. Compl.)

## DISCUSSION

## I.     Summary Judgment Standard

Summary judgment is appropriate if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  Courts must view the evidence and all reasonable inferences in the

light most favorable to the nonmoving party.  *Weitz Co. v. Lloyd's of London*, 574 F.3d

885, 892 (8th Cir. 2009).  However, "[s]ummary judgment procedure is properly

regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

## II.   Interpretation of Insurance Policies

This case requires the Court to interpret and apply the Policy that Travelers issued to Rainy River. "[A]n insurance contract is subject to general principles of contract law," and "[c]overage issues and the construction and interpretation of a policy are questions of law." *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 648 (8th Cir. 2008). "Minnesota law construes an insurance policy's words of inclusion broadly and words of exclusion narrowly." *Sletten & Brettin Orthodontics, LLC v. Cont'l Cas. Co.*, 782 F.3d 931, 935 (8th Cir. 2015).

6

### III.    The Pollution Exclusion

The parties' motions focus on their dispute over the interpretation and application of the Policy's Pollution Exclusion, particularly the meaning of the word "atmosphere."[3] Travelers argues that the Pollution Exclusion precludes coverage under the Policy, because Klick's injuries arose out of carbon monoxide released from the fishing boat into the outside air.  Travelers maintains that the outside air falls within the meaning of "atmosphere."  On the other hand, Klick and Rainy River contend that the Pollution Exclusion does not apply, because the carbon monoxide was released from the fishing boat's engine into the engine compartment and then was re-released into the air surrounding the boat, including the wheelhouse where Klick was located.  Klick and Rainy River assert that the air in the engine compartment and the air in the wheelhouse do not constitute "atmosphere."

### A.    Construction of the Pollution Exclusion

The Court begins by interpreting the Pollution Exclusion in light of three cases cited by the parties:  *Board of Regents of the University of Minnesota v. Royal Insurance Co. of America*, 517 N.W.2d 888 (Minn. 1994), *Wakefield Pork, Inc. v. Ram Mutual Insurance Co.*, 731 N.W.2d 154 (Minn. Ct. App. 2007), and *Midwest Family Mutual Insurance Co. v. Wolters*, 831 N.W.2d 628 (Minn. 2013).

---

[3]    For purposes of the motions currently pending before the Court, the parties do not dispute that carbon monoxide is a pollutant and that Klick suffered injuries arising out of the emission of carbon monoxide.  (*See* Stipulated Facts ¶¶ 3-8; Doc. No. 47 at 8, 13-15; Doc. No. 52 at 15.)

First, *Board of Regents* held that the word "atmosphere," when used in a pollution exclusion, refers to "ambient air," as opposed to air within an enclosed structure. *Bd. of Regents*, 517 N.W.2d at 892-93.   In that case, the Minnesota Supreme Court considered a pollution exclusion that excluded coverage for injury arising out of the release of "pollutants into or upon land, the atmosphere, or any water course or body of water." *Id.* at 890.   In interpreting the exclusion, the court distinguished between indoor and outdoor pollution, explaining:   "When the air supply within a building becomes contaminated, it is harmful to the controlled environment of that building; but the contamination of the air in a building is not harmful to the surrounding natural environment . . . ." *Id.* at 893.   In this context, the court determined that "atmosphere" referred to ambient air and therefore the pollution exclusion did not preclude insurance coverage for liability related to the release of asbestos fibers into a building's interior air. *Id.* at 892-93.

Second, *Wakefield Pork*, interpreting *Board of Regents*, explained that a provision excluding coverage for pollutants released into "atmosphere" contemplates pollutants "released directly" into ambient air, even if the pollutants incidentally affect indoor air as well. *Wakefield Pork*, 731 N.W.2d at 160-61.   In that case, the underlying lawsuit involved fumes emitted from a pig farm that contaminated the air inside a neighboring house. *Id.* The Minnesota Court of Appeals held that the pollution exclusion precluded coverage because, unlike in *Board of Regents*, the pollutants at issue did not originate in a building; rather the fumes were released directly into  "atmosphere" and only indirectly affected the air inside the house. *Id.*

8

Third, *Wolters* concluded that a pollution exclusion that does *not* use language descriptive of the natural environment—such as "atmosphere"—applies to both indoor and outdoor pollution. *Wolters*, 831 N.W.2d at 638. The pollution exclusion in that case, unlike the pollutions exclusions in *Board of Regents* and *Wakefield Pork*, did not describe the release of pollutants into "atmosphere." *Id.* at 631-32. As such, the Minnesota Supreme Court found that the pollution exclusion was not limited to pollutants released into ambient air and therefore excluded coverage for injuries arising out of carbon monoxide released inside a house.[4] *Id.* at 638.

Here, the Pollution Exclusion precludes coverage for injury arising out of the release of pollutants into "atmosphere." Accordingly, under *Board of Regents* and *Wakefield Pork*—which both involved exclusions for pollutants released into "atmosphere"—the Pollution Exclusion applies when the pollutant at issue is released directly into ambient or outdoor air, even if the pollutant indirectly affects air inside an enclosed structure. Conversely, the Pollution Exclusion does not apply when the pollutant is released directly into air inside an enclosed structure such as a house or other building.

## B.   Application of the Pollution Exclusion

In addition to interpreting the Policy, the Court must apply the Policy to the facts of this case. In so doing, it must determine what duties, if any, the Policy imposes on

---

[4]     *Wolters* also holds that carbon monoxide is a pollutant: "While there may be substances that are difficult to establish as 'pollutants' for purposes of the absolute pollution exclusion, carbon monoxide is not one of them." *Wolters*, 831 N.W.2d at 637.

Travelers.  Under Minnesota law, a liability insurer may have two duties:  (1) a duty to defend; and (2) a duty to indemnify.  *Selective Ins. Co. of Am. v. Smart Candle, LLC*, 781 F.3d 983, 985 (8th Cir. 2015).  Indeed, the Policy in this case includes both duties. (Policy at 30 (Sec. II, Coverage A, ¶ 1).)  Travelers claims that it has neither a duty to defend nor a duty to indemnify Rainy River, while Klick and Rainy River assert that the Policy "provide[s] coverage including indemnity."  (Am. Compl. ¶ 31; Doc. No. 51 at 1.) No party, however, expressly distinguishes between the two duties in its briefs. Nonetheless, the Court will discuss each duty separately, below.

### 1.      Duty to Defend

The duty to defend obligates an insurer to defend against claims brought against its insured, and it "extends to every claim that 'arguably' falls within the scope of coverage."  *AMCO Ins. Co. v. Inspired Techs., Inc.*, 648 F.3d 875, 880 (8th Cir. 2011) (quoting *Gen. Cas. Co. of Wisc. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 576 (Minn. 2009)).  The duty to defend is determined by examining the underlying complaint and the policy coverage.  *Sletten*, 782 F.3d at 934-35.  Thus, the Court turns to the Underlying Complaint filed by Klick in the personal injury lawsuit against Choice and Rainy River.

Here, all legal claims in the Underlying Complaint stem from the allegation that while Klick and his companions were aboard a fishing boat on Lake of the Woods, "the boat's exhaust system seriously malfunctioned and leaked carbon monoxide, which . . . caused serious and permanent physical injury to [Klick]."  (Underlying Compl. ¶ 5.)  The Underlying Complaint does not allege how or where the carbon monoxide was released.

10

(*See id.*)  As such, looking only at the Underlying Complaint, it is possible that carbon

monoxide was released into an enclosed cabin, rather than into ambient air, and that the

Policy's Pollution Exclusion would therefore not apply.  Accordingly, because the claims

in the Underlying Complaint would "'arguably' fall[] within the scope of coverage," the

Court finds, as a matter of law, that Travelers had a duty to defend Rainy River in the

underlying personal injury suit.[5]  *See AMCO*, 648 F.3d at 880.

### 2.     Duty to Indemnify

The duty to indemnify requires an insurer to pay damages that the insured is

legally obligated to pay for covered claims, and it "arises only if the insured ultimately

proves up facts showing coverage." *Nelson v. Am. Home Assurance Co.*, 824 F. Supp. 2d

909, 915 (D. Minn. 2011).  As such, to determine the duty to indemnify, the Court

examines the entire factual record, rather than just the Underlying Complaint.  *See id.*

Here, the undisputed facts show that Klick's injuries occurred while the fishing

boat was outside on Lake of the Woods.  Due to an engine malfunction, carbon monoxide

gas built up in the fishing boat's engine compartment before it was released into the open

air when the compartment was opened.  The carbon monoxide then traveled into the

---

[5]        In response to a request from Travelers (*see* Doc. No. 71), the Court clarifies that
Travelers no longer has a duty to defend Rainy River in the underlying personal injury
suit.  First, the underlying suit has been resolved and closed.  (*See* Rufer Aff. ¶ 2, Ex. A;
Doc. Nos. 71, 72.)  Second, because the Court concludes that Travelers has no duty to
indemnify Rainy River (as explained below), Travelers "is relieved of its duty to defend."
*See Woida v. N. Star Mut. Ins. Co.*, 306 N.W.2d 570, 574 (Minn. 1981).  The Court's
judgment of no duty to indemnify, however, does not *retroactively* relieve Travelers of its
prior duty to defend.  *See* 14 Steven Plitt et al., Couch on Insurance § 200:48 (3d ed.)
(updated June 2016).

wheelhouse where Klick was standing and caused Klick's injuries.  The wheelhouse had a roof and three sides but was open in the back.  Because the Pollution Exclusion applies when a pollutant is released directly into "atmosphere"—i.e., ambient air—it applies in this case, where carbon monoxide gas was released into the unenclosed air surrounding the fishing boat.  *See Bd. of Regents*, 517 N.W.2d at 892-93; *Wakefield Pork*, 731 N.W.2d at 160-61.

Indeed, this case is unlike *Board of Regents*, where the pollutant at issue was released—and contained—inside a building.  Although Klick and Rainy River suggest that the engine compartment and wheelhouse are similar to the building in *Board of Regents*, the Court disagrees.  First, the fishing boat's engine compartment is not an enclosed structure similar to a building.  In the Court's view, the engine compartment is part of the system that makes up the fishing boat's engine; it is not a separate "controlled environment" that can be polluted by the engine.  *See Bd. of Regents*, 517 N.W.2d at 893.  Further, the carbon monoxide gas released by the engine—unlike the pollutant in *Board of Regents*—was not contained within an interior environment but rather was released into the natural air, allowing it to injure Klick and his companions.  *See id.*

Second, the wheelhouse is not an enclosed structure similar to a building.  Unlike a building (or even the interior of a car or the enclosed cabin of a boat), the wheelhouse is completely open on one side, allowing air to flow freely in and out.  Further, even if the wheelhouse were an enclosed structure, this case would be similar to *Wakefield Pork*, not *Board of Regents*.  Just as the pollutant in *Wakefield Pork* was "released directly" into

12

ambient air before indirectly affecting air inside a home, the carbon monoxide in this case was "released directly" into ambient air surrounding the fishing boat before indirectly contaminating the air inside the wheelhouse. *See Wakefield Pork*, 731 N.W.2d at 161. Thus, the Court concludes that the carbon monoxide gas that injured Klick was released directly into "atmosphere" and therefore, as a matter of law, the Pollution Exclusion precludes Travelers' duty to indemnify Rainy River for damages stemming from Klick's underlying personal injury suit.

## IV.    Attorneys' Fees

In its motion for summary judgment, Travelers requests "fees to Plaintiff as the prevailing party." (Doc. No. 46.) Travelers, however, did not demand attorneys' fees in its complaint and furthermore provides no basis for its request in its briefs supporting its motion. Indeed, Travelers' briefs do not even address Travelers' request for fees. As such, the Court concludes, as a matter of law, that Travelers is not entitled to attorneys' fees.

## V.    The *Miller-Shugart* Agreement

Finally, the Court briefly addresses the *Miller-Shugart* agreement between Klick and Rainy River in the underlying personal injury lawsuit. In a *Miller-Shugart* agreement, the injured party and the insured—here, Klick and Rainy River, respectively—agree that the injured party can only collect the agreed damages from the insurance that arguably covers the injured party's claim. *E.g., Corn Plus Coop. v. Cont'l Cas. Co.*, 516 F.3d 674, 677 n.2 (8th Cir. 2008) (citing *Miller v. Shugart*, 316 N.W.2d

729 (Minn. 1982)).  Thus, a *Miller-Shugart* agreement is relevant only if the insurer has a duty to indemnify the insured for damages stemming from the injured party's claim.  In this case, where the Court finds that Travelers has no duty to indemnify Rainy River, it appears to the Court that the parties' dispute over the validity of the *Miller-Shugart* agreement is moot.

Because the parties did not brief this issue in connection with their motions for summary judgment and partial summary judgment (Doc. Nos. 46, 51), the Court requested that "if any party disagrees with the Court's conclusion that Travelers' breach-of-contract claim and request for a declaration that the *Miller-Shugart* agreement voids the Policy are both moot," that party should contact the Court (Doc. No. 69 at 13).  Both Travelers and Klick and Rainy River submitted letters to the Court indicating no objection to the Court's conclusion.  (Doc. Nos. 71, 72.)  As such, the Court finds that dismissal of Travelers' breach-of-contract claim and request for a declaration that the *Miller-Shugart* agreement voids the Policy is appropriate.

## CONCLUSION

In sum, the Court finds that the Policy required Travelers to defend Rainy River in connection with the underlying personal injury lawsuit filed by Klick, but it does not require Travelers to indemnify Rainy River.  The Policy's Pollution Exclusion excludes coverage for injury arising out of the release of pollutants into ambient air, as opposed to indoor air.  Travelers had a duty to defend Rainy River, because the Underlying Complaint alleges facts that arguably fall within the scope of the Policy.  Travelers does

not have a duty to indemnify Rainy River, however, because the undisputed facts show that carbon monoxide released into ambient air caused Klick's injuries; thus, the Pollution Exclusion applies.

**ORDER**

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff Travelers Property Casualty Company of America's Motion for Summary Judgment (Doc. No. [46]) is **GRANTED IN PART AND DENIED IN PART** as follows:

      a.      Travelers' Motion is **GRANTED** with respect to Travelers' duty to indemnify Rainy River.  Travelers owes no duty to indemnify Rainy River under the Policy in connection with the underlying personal injury lawsuit filed by Klick.

      b.      Travelers' Motion is **DENIED** in all other respects.

2.      Defendants Klick and Rainy River's Motion for Partial Summary Judgment (Doc. No. [51]) is **GRANTED IN PART AND DENIED IN PART** as follows:

      a.      Klick and Rainy River's Motion is **GRANTED** with respect to Travelers' duty to defend Rainy River to the extent that, under the Policy, Travelers had a duty to defend Rainy River in the underlying personal injury lawsuit prior to that lawsuit's resolution.  In addition, Travelers is not entitled to attorneys' fees.

15

      b.     Klick and Rainy River's Motion is **DENIED** in all other respects.

     3.     Travelers Property Casualty Company of America's remaining claims are moot and are therefore **DISMISSED WITH PREJUDICE**.

     **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 6, 2016                <u>s/Donovan W. Frank</u>
                                           DONOVAN W. FRANK
                                           United States District Judge